[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-12598

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 08, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-00228-CV-5-RS-EMT


TONYA C. MILLER-GOODWIN,

                                                        Plaintiff-Appellant,

versus

CITY OF PANAMA CITY BEACH, FLORIDA

                                                        Defendant-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(July 8, 2010)

Before EDMONDSON and MARCUS, Circuit Judges, and BARBOUR,[*] District
Judge.

_____

    [*]Honorable William Henry Barbour, Jr., United States District Judge for the Southern
District of Mississippi, sitting by designation.

PER CURIAM

Appellant, Tonya C. Miller-Goodwin ("Goodwin"), appeals the grant of summary judgment to her former employer, the City of Panama City Beach, Florida ("City"), on her claims of disparate treatment and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), codified at 42 U.S.C. § 2000e, *et seq.* Goodwin, who was once employed as a corporal and field training officer in the City's Police Department ("Department"), claims her employment changed on January 12, 2006, after one of the senior officers, Major David Humphreys ("Humphreys"), "slapped her on the buttocks" and she told him that if he ever touched her again she would "sue him and the boys' club so fast it would make his head spin." The employment changes cited by Goodwin include: Humphreys did not attend her wedding; she was not allowed to transfer personal belongings and other contents from her old patrol vehicle into a new vehicle at the station; she was not permitted to use compensatory time while attending college classes and was not allowed to drive her patrol car to class unless she was on duty; she was belittled by other officers; she was accused of not having her internship with the State Attorney's Office properly approved and, at the request of the Police Chief, was only permitted to do office work during her internship; she was denied supervisory duties and was denied a promotion to Relief Supervisor; and she received counseling memoranda and

unwarranted disciplinary actions. Goodwin's employment with the City was terminated on or about February 2, 2007, after an Internal Affairs Investigation of a complaint made against Goodwin by a new recruit found she had violated seven of the Department's Rules and Regulations.

Following the exhaustion of her administrative remedies, Goodwin filed a lawsuit alleging Title VII claims including disparate treatment and retaliation that were decided in favor of the City on summary judgment.[1] On appeal, Goodwin argues the district court erred in granting summary judgment on her disparate treatment claims because it failed to consider all of the adverse actions about which she complained, and applied a too exacting comparator standard. With regard to her retaliation claim, Goodwin argues that the district court erred in finding she had not engaged in protected conduct for the purpose of establishing a retaliation claim, and further erred by not finding a nexus between the protected conduct and the alleged adverse employment actions. Finding no error, we AFFIRM.

We review a grant of summary judgment *de novo*, considering all the evidence in the light most favorable to the nonmoving party, and making all reasonable inferences in her favor. Brooks v. County Comm'n of Jefferson Cnty., Ala., 446 F.3d

---

[1] Goodwin also alleged state law claims and a Title VII hostile work environment claim that were either dismissed or withdrawn during the proceedings below.

3

1160, 1162 (11th Cir. 2006).  Summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).

Disparate Treatment

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).  Here, Goodwin relies on circumstantial evidence to establish her disparate treatment claims.  Accordingly, we test the sufficiency of those claims by applying the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792  (1973).  See e.g. McCann v. Tillman, 526 F.3d 1370, 1373 (11th Cir. 2008) ("Where ... there is no direct evidence of discrimination, a plaintiff may prove discrimination through circumstantial evidence, using the burden-shifting framework established in McDonnell Douglas ...").

To establish a *prima facie* case of disparate treatment, a plaintiff must show: (1) she is a member of a protected class; (2) she was subjected to adverse employment

4

action; (3) her employer treated similarly situated male employees more favorably; and (4) she was qualified to do the job. McCann, 526 F.3d at 1373 (quoting EEOC v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1286 (11th Cir. 2000)) (alterations in original). If the plaintiff is successful, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Id. (citing Burke-Fowler v. Orange Cnty., Fla., 447 F.3d 1319, 1323 (11th Cir. 2006)). If it does so, the plaintiff must then prove the reason proffered by the defendant is a pretext for unlawful discrimination. Id. (citing Burke-Fowler, 447 F.3d at 1323).

There is no dispute that Goodwin satisfied the first and fourth prongs of a *prima facie* case of disparate treatment. Therefore, in determining whether a genuine issue of material fact existed, we only consider whether Goodwin suffered an adverse employment action and, if so, whether a similarly situated non-protected employee, in this case a male, was treated more favorably.

As regards the second prong of her *prima facie* disparate treatment case, Goodwin cites to a series of events beginning in January of 2006, and concluding with her termination in February of 2007, which she contends constitute adverse employment actions. These events are:

Late January of 2006 - Humphreys did not attend Goodwin's wedding.

January 27, 2006 - Goodwin was not permitted to transfer personal belongings

5

and other contents from her old patrol vehicle to her new vehicle car at the police station.

May 5, 2006 - Goodwin was told she had to use vacation time instead of compensatory time to attend college classes, and that she was no longer permitted to use her patrol vehicle to drive to classes unless she was already at work.

May 19, 2006 - Goodwin was "belittled" by a lieutenant during a shift meeting.

June 1, 2006 - Humpreys and another officer accused Goodwin of not having her college internship with the State Attorney's Office properly approved.

June 2, 2006 - Goodwin discussed a hypothetical lawsuit with a female co-worker to determine whether the latter would join her in filing a discrimination lawsuit against the City. The co-worker informed Humphreys of the conversation a short time thereafter.

On or about June 2, 2006 - Goodwin was told that the "back hall" was mad at her, and she was not going to have supervisor duties for a while.

June 5, 2006 - Goodwin was told by the then-State Attorney that he had been contacted by the Police Chief and asked that she only be assigned office work during her internship.

June 6, 2006 - Goodwin was told she was being promoted to Relief Supervisor. Later that day, she was told "never mind" and that Humpreys had decided to wait and

make the promotion the following week.

June 10, 2006 - Goodwin was not given supervisory duties.

June 12, 2006 - Corporal Chris Eaves was promoted to Relief Supervisor.

June 16, 2006 - Goodwin was told to "watch her back".

July 18, 2006 - A captain in the Department told Goodwin to not speak to his investigators, and that she should to talk to her Watch Commander. When she informed him that she was the Watch Commander on duty, he told her to call the "real" one at home.

September 29, 2006 - Goodman received a counseling memorandum for spreading a rumor about a co-worker's extramarital affair.

September 30, 2006 - Goodwin received a second counseling memorandum for failing to respond to a call.

October 28, 2006 - Goodwin was denied promotion to Relief Supervisor.

December 12, 2006 - Several officers ignored Goodwin at a Christmas party.

December 18, 2006 - Goodwin was informed that the "higher-ups" believed corporals needed to be placed in zones and treated like officers.

December 19, 2006 - Goodwin was accused of making a scene at a local retail store. Thereafter, she was placed in a zone.

December 23, 2006 - Goodwin was not notified of an event cancellation when

she was acting as Watch Commander.

January 2, 2007 - Goodwin was notified that the Department was initiating an Internal Affairs Investigation based on a complaint a new recruit had made against her.

February 2, 2007 - Goodwin's employment with the City was terminated after the Internal Affairs Investigation found she had violated seven of the Department's Rules and Regulations.

Of the adverse employment actions claimed by Goodwin, we only consider those occurring on or after July 28, 2006, because her Charge of Discrimination was filed with the Florida Commission on Human Relations on March 23, 2007. See e.g. National R.R. Passenger Corp. v. Morgan , 536 U.S. 101, 110 (2002) ("A discrete ... discriminatory act 'occurred' on the day that it 'happened.' A party, therefore, must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it.").

Of the timely allegations, the majority do not constitute adverse employment actions for the purposes of maintaining a disparate treatment claim. "[T]o prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a *serious and material* change in the terms, conditions, or privileges of employment. Moreover, the employee's subjective view of the

significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1239 (11th Cir, 2001). Goodwin's claims that she was ignored at a party, was not told of an event cancellation, and was accused of making a scene are not actionable because they do not evidence any change in the terms, conditions, or privileges of her employment. Goodwin's claims that she had to use vacation time instead of compensatory time to attend college classes, she could not drive her patrol vehicle to class unless on duty, she was placed in a zone, and she received two counseling memoranda are likewise not actionable because, under the circumstances, they have not been shown to have constituted a *serious and material* change in the terms, conditions, or privileges of her employment. See e.g. id. at 1240 (finding that receipt of negative job performance memoranda did not constitute adverse employment actions in a case in which there was no showing that the plaintiff suffered any tangible consequence - loss of pay, benefits, or further discipline - as a result of receiving the memoranda). Accordingly, we find the district court did not err by rejecting these alleged employment actions when considering Goodwin's claim of disparate treatment.

Goodwin's claims that she was denied promotion to Relief Supervisor in October of 2006, and was terminated from her employment for disciplinary reasons

following an Internal Affairs Investigation, however, constitute adverse employment actions, thereby satisfying the second prong of her *prima facie* disparate treatment case. Thus, the focus turns to whether Goodwin has shown that a similarly situated male employee was treated more favorably in like situations.

Goodwin has failed to establish a *prima facie* case with regard to her failure to promote claim. While the record shows that a male officer was assigned the Relief Supervisor position, the record also shows that the male officer was promoted because he (a sergeant) out-ranked Goodwin (a corporal) in the Department. Based on the difference in rank, Goodwin has failed to show that she and the male officer who was promoted to the Relief Supervisor position were similarly situated. See Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004) (explaining the "comparator must be similarly situated in all relevant respects" and "nearly identical to the plaintiff."). Additionally, as the City articulated a legitimate, nondiscriminatory reason for the alleged adverse employment action, i.e. the male officer was of a higher rank than Goodwin, it has satisfied the second phase of the burden-shifting framework of McDonnell Douglas. Goodwin did not present any evidence that the City's legitimate, non-discriminatory reason for promoting the higher-ranking male officer, instead of her, was pretextual.

Goodwin has also failed to establish a *prima facie* case with regard to her

10

discriminatory discipline/termination claim. "When a plaintiff alleges discriminatory discipline, to determine whether employees are similarly situated, we evaluate 'whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.'" Burke-Fowler, 447 F.3d at 1323 (quoting Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999) (alterations in original). In so doing, "[w]e require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." Id. (quoting Maniccia, 171 F.3d at 1368). See also Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1185 (11th Cir. 1984) ("We have consistently held that a plaintiff fired for misconduct makes out a *prima facie* case of discriminatory discharge if he shows that he is a member of a protected class, that he was qualified for the job from which he was fired, and that the misconduct for which he was discharged was nearly identical to that engaged in by an employee outside the protected class whom the employer retained.") (alterations in original).[2]

---

[2] Goodwin argues that because hers is a rules violation claim, to establish a *prima facie* case of disparate treatment she was required to show that she was a member of a protected class and "either (a) that [s]he did not violate the work rule, or (b) that [s]he engaged in misconduct similar to that of a person outside the protected class, and that the disciplinary measures enforced against [her] were more severe than those enforced against the other persons who engaged in similar misconduct." Jones v. Gerwens, 874 F.2d 1534, 1540 (11th Cir. 1989). Under this standard, Goodwin argues that the district court erred in failing to find an issue of material fact on her *prima facie* case because she contested whether she had committed the rule violations that

11

The City contends that Goodwin was terminated after it discovered, during an Internal Affairs Investigation that was initiated in response to a complaint made against her by a new recruit, that she had violated seven Department Rules and Regulations, including making false and/or dishonest statements, failing to properly supervise and/or disciple subordinates, failing to comply with directives and orders, failing to properly patrol a zone, loafing, and improper use of radio and established communications procedures. Goodwin, however, maintains that the City engaged in discriminatory discipline/termination because male officers who engaged in misconduct more serious than that of which she was accused, were not investigated

were the basis for her termination.

> This Court has previously examined the above quoted language in <u>Jones</u> and determined:
>
> Considering the facts in <u>Jones</u>, our impression is that words about "did not violate the work rule" are unnecessary to the decision in <u>Jones</u> and are dicta; but we will discuss them. The pertinent words in <u>Jones</u> demand not two, but three, elements: (1) the plaintiff is a member of a protected class; (2) the plaintiff has engaged - either (a) disputedly or (b) admittedly - in misconduct similar to persons outside the protected class; and (3) that similarly situated, nonminority employees (that is, persons outside the protected class) received more favorable treatment.
>
> We stress that, under the <u>Jones</u> formulation, no plaintiff can make out a *prima facie* case by showing just that she belongs to a protected class and that she did not violate her employer's work rule. The plaintiff must also point to someone similarly situated (but outside the protected class) who disputed a violation of the rule and who was, in fact, treated better.
>
> <u>Jones v. Bessemer Carraway Med. Ctr.</u>, 137 F.3d 1306, 1311 n.6, reh'g denied and opinion superseded in part, 151 F.3d 1321 (11th Cir. 1998). Thus, regardless of whether Goodwin had committed the alleged rule violations, she is still required to show that a similarly situated male who had committed the same rule violations received more favorable treatment than her.

12

or terminated. Here, the district court correctly granted summary judgment on Goodwin's discriminatory discipline/termination claim because she did not show that other male employees of the Department engaged in misconduct that was nearly identical to hers, but were treated more favorably.[3] As would-be comparators, Goodwin identifies Sergeant Richard McClanahan and claims that he was not investigated for falsifying a probable cause affidavit and engaging in an illegal search, and that he only received written reprimands and/or suspensions for having: failed to properly document civilian passengers in his police vehicle, associated with an individual being investigated by the FBI while on duty, and allowed a police canine to attack an arrestee who was already under police control. Goodwin next identifies Nathan Dean who she claims was not terminated even though he engaged in conduct unbecoming of an officer by displaying his badge while intoxicated, discussing "kicking someone's ass", and interfering with a traffic stop. Goodwin also claims that Chris Eaves lied on his employment application, engaged in conduct unbecoming an officer including deception, was found guilty of neglect of duty, and

---

[3] Goodwin argues that the district court applied too exacting a comparator standard when reviewing her disparate treatment claims. We find no merit in this argument as the district court correctly applied the governing "nearly identical" standard when considering the potential comparators identified by Goodwin. We likewise find no merit in Goodwin's argument that the "nearly identical" standard must be revised in light of the United States Supreme Court decision in Sprint/United Mgmt. Co. v. Mendelson, 552 U.S. 379 (2008), and, therefore, decline her invitation to so do.

13

was charged with failure to comply with orders. Finally, Goodwin claims that Humphreys had a history of inappropriate conduct toward women, received a written reprimand for conduct unbecoming an officer, came to a crime scene smelling of alcohol, and drove his police vehicle while intoxicated.

Although the comparators identified by Goodwin arguably violated some of the Department's Rules and Regulations, and perhaps even violated one or more of the same Rules and Regulations that she was found to have violated, there has been no showing that any of them violated all of the Rules and Regulations that resulted in her termination or that their alleged misconduct was nearly identical to hers. Having viewed the evidence in Goodwin's favor, we find she has failed to identify any similarly situated male employee who engaged in misconduct nearly identical to hers, but who received less severe disciplinary sanctions. Accordingly, as Goodwin has failed to present proper comparators, we find that she has failed to establish a *prima facie* case with regard to her discriminatory discipline claim.

Retaliation

Goodwin argues that the district court erred in granting summary judgment on her retaliation claim. To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show: "(1) she engaged in statutorily protected expression; (2) she

14

suffered an adverse employment action; and (3) the adverse action was causally related to the protected activity." Webb-Edwards v. Orange Cnty. Sheriff's Office, 525 F.3d 1013, 1028 (11th Cir. 2008). If her employer then articulates a legitimate reason for its actions, the plaintiff must show that the "proffered reasons for taking the adverse action were actually a pretext for prohibited retaliatory conduct." McCann, 526 F.3d at 1375 (quoting Sullivan v. Nat'l R.R. Passenger Corp., 170 F.3d 1056, 1059 (11th Cir. 1999)). To show pretext, the plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Id. (quotation omitted).

Goodwin argues that she engaged in two acts of statutorily protected expression. The first was on January 12, 2006, when she threatened to file suit if Humphreys ever touched her again. The second was on June 2, 2006, when she discussed filing a hypothetical discrimination lawsuit with one of her female co-workers. Even if we assume, *arguendo*, that these activities satisfy the first prong of Goodwin's *prima facie* case of retaliation, she has not shown that she suffered an adverse employment action that was causally related to those expressions.

In support of the second prong of her *prima facie* retaliation claim, Goodwin cites to the same adverse employment actions that were alleged in support of her

15

disparate treatment claim. Of the adverse employment actions alleged, we again only consider those occurring on or after July 28, 2006, as the others are time barred. See Morgan, 536 U.S. at 110) ("A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.' A party, therefore, must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it."); Davis v. Coca-Cola Bottling Co. Consol, 516 F.3d 955, 971-72 & n.35 (11th Cir. 2008) (finding that the time-bar for a Title VII retaliation claim is measured from the date the plaintiff files her EEOC charges). An adverse employment action for the purpose of a retaliation claim includes employer conduct that has a materially adverse effect on the plaintiff, irrespective of whether it is employment or workplace-related. See Crawford v. Carroll, 529 F.3d 961, 973 (11th Cir. 2008) (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006)). To be actionable, the "plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." White, 548 U.S. at 68.

Viewing the evidence in Goodwin's favor, the first timely and potentially adverse employment action she alleges is her receipt of a counseling memorandum on September 29, 2006. Even if we were to accept the counseling memorandum as

an adverse employment action, because Goodwin's receipt of that memorandum followed her January 12, 2006, threat to sue by eight months, and followed her June 2, 2006, conversation with a co-worker regarding potential litigation by four months, she has failed to create a jury question as to causation with regard to that action. See e.g. Drago v. Jenne, 453 F.3d 1301, 1308 (11th Cir. 2006) (finding a three month period between a protected activity and an adverse employment action was not sufficiently proximate to show causation on a retaliation claim); Higdon v. Jackson, 393 F.3d 1211, 1221 (11th Cir. 2004) ("By itself, [a] three month [intervening] period ... does not allow a reasonable inference of a causal relation between [a] protected expression and [an] adverse action" (citing Clark Cnty. Sch. Dist. v. Breedon, 532 U.S. 268, 273-74 (2001)); Wascura v. City of South Miami, 257 F.3d 1238, 1248 (11th Cir. 2001) (finding that a three and one-half month temporal proximity between a protected activity and an adverse employment action "is insufficient to create a jury issue on causation."). As the remainder of the alleged adverse employment actions are further removed in time from the protected activities, Goodwin has likewise failed to create a jury question as to causation with regard to those actions. Because Goodwin cannot establish a *prima facie* case of retaliation, the district court properly entered summary judgment in favor of the City on this claim.

For the reasons stated above, the district court's grant of summary judgment

on Goodwin's disparate treatment and retaliation claims is AFFIRMED.